**Billy G. JOY and Ethel Joy, Plaintiffs-Respondents,**

v.

**James A. HULL and Virginia Hull, Defendants-Appellants.**

No. 13798.

Missouri Court of Appeals, Southern District, Division Three.

March 7, 1985.

Dale E. Nunnery, Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for plaintiffs-respondents.

Clinton D. Summers, Summers, Cope & Walsh, Poplar Bluff, for defendants-appellants.

GREENE, Judge.

This case involves a dispute over the ownership of real estate in Butler County, Missouri, between plaintiffs, Billy and Ethel Joy, and defendants, James and Virginia Hull.

The disputed tract of less than five acres is rocky pasture land covered with brush and trees, and is of little apparent value. It lies between land purchased by the Hulls from Daniel and Lou Brown on June 5, 1974, and land purchased by the Joys from Chester and Arcadia Lindsay on August 17, 1976. The Lindsays had sold the Hull property to the Browns on May 28, 1971. According to Chester Lindsay's testimony at the time of trial, the Lindsays apparently had mistakenly included a description of the land in the disputed area, which the Joys now claim by adverse possession, in the deed they had given the Browns.

The case was court-tried, after which a judgment was entered, quieting title to the disputed tract in the Joys for the reason that they and their immediate predecessors in title had adversely possessed the land continuously for a period of more than ten years, as required by the adverse possession statute. § 516.010, RSMo 1978.

The Hulls appealed, contending the trial court erred in granting a judgment for the Joys because 1) the judgment was against the weight of the evidence since the Joys had not proved their possession of the disputed tract was actual and notorious, and 2) it erroneously "tacked" time spent on the tract adversely by the Lindsays to time spent on the land by the Joys in order to reach the ten-year statutory adverse possession period.

It is our duty to affirm the trial court's judgment if there is substantial evidence to support it, if it is not against the weight of the evidence, and if it is not based on any erroneous declaration or application of law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Since findings of fact and conclusions of law were not requested of, or made by, the trial court, it is presumed that all facts are found to support the judgment. *Lohrmann v. Carter,* 657 S.W.2d 372, 376 (Mo. App.1983). We accept as true all evidence, and permissible inferences therefrom, favorable to the prevailing parties below, disregarding all evidence and inferences to the contrary. *S.G. Adams Printing v. Central Hardware Co.,* 572 S.W.2d 625, 628 (Mo.App.1978).

Viewed according to these principles, the facts are as follows. The disputed tract, referred to in the evidence as tract "B", is roughly rectangular in shape, and is bounded on the west and south by county road 410, on the east by Cane Creek, and on the north by property owned by the Joys, over which there is no legitimate dispute. If we understand the Hulls' appellate brief correctly, the only area claimed by them is tract "B". Fences border the county road on its east and west sides, and extend from the northern boundary of a section line to a point south of tract "B" where the road crosses the creek. The land in question is across the road from the rest of the Hulls' property, but is adjacent to the Joy land.

The overwhelming weight of the trial evidence was that the Lindsays did not intend to convey tract "B" to the Browns when they sold them land in 1971. Lindsay continued to pasture his cattle on the tract, bush hogged it on a regular basis, maintained the fences, picked and sold walnuts from the land, and hunted and fished on the property. Brown did not regard the property as his, did not treat it as such, and did not tell the Hulls that tract "B" was included in the land the Browns sold the Hulls in 1974. Lindsay did tell Joy that tract "B" was a part of the land sold to the Joys in 1976.

From the time of the purchase, the Joys claimed as theirs the land west of the coun-

ty road. They maintained the fences and pastured cattle in the area. Joy hunted and fished on the tract, and granted or denied permission to other people who wished to do the same. Hulls' house was located across the road from tract "B", and Hull could see that Joy was repairing fences and pasturing cattle on tract "B". Hull never complained of this, and after notice that Joy was using the land as if it were his, made no complaint. Suit claiming title by adverse possession was filed by the Joys on September 9, 1983.

 Actual possession of real estate may be shown by continuing acts of occupying, clearing, pasturing and erecting and maintaining fences on rural land. *Teson v. Vasquez,* 561 S.W.2d 119, 126 (Mo.App. 1977). Continuous use of the land under a claim of right for the purposes for which the land is susceptible, supports a claim of adverse possession. *Feinstein v. McGuire,* 297 S.W.2d 513, 517 (Mo.1957). The evidence was sufficient to show that the Joys and their predecessors in title, the Lindsays, used the land for a continuous period of more than ten years before suit was filed.

As to point two, it was permissible for the trial court to "tack" the Joys' adverse possession time of seven years spent on tract "B" to the adverse possession time in excess of three years spent on the same tract by the Lindsays as the immediate predecessors of the Joys. The Hulls argue that the continued possession of tract "B" by the Lindsays (grantors) could not be considered as adverse possession against a grantee (the Browns and their successors in title, the Hulls) as a grantor is regarded as a tenant of, or trustee for, the grantees under those circumstances, citing *Hood v. Denny,* 555 S.W.2d 337, 346 (Mo.App.1977). Their reliance on *Hood* is misplaced. The rule regarding continued possession by a grantor of transferred property is stated in *Orrick Dehydrating Co. v. Edwards,* 673 S.W.2d 48, 51–52 (Mo.App.1984), where the appellate court stated:

"Ordinarily, where a grantor continues in possession of the land after execution and delivery of the deed, his possession will be that either of tenant or trustee of the grantee; he will be regarded as holding the premises in subserviency to the grantee. Thus the occupation of land by a grantor, after conveyance is made, is presumed to be under, and in subordination to, the legal title held by his grantee, for he is ordinarily estopped by his deed from claiming that his holding is adverse. However, this presumption is rebuttable. A conveyance does not, of itself, prevent the grantor from acquiring title by adverse possession as against the immediate and remote grantees."

 Here, the presumption was rebutted by the adverse possessory acts of the Lindsays during the period of time the Browns had title to the land, and was dissolved completely when the Browns conveyed to the Hulls, as the presumption applies only between a grantor and his immediate grantee. *Orrick Dehydrating Co. v. Edwards,* supra, at 52. The point has no merit.

Judgment affirmed.

CROW, P.J., and TITUS and FLANIGAN, JJ., concur.